Good morning, your honors. May it please the court, Joseph Porta on behalf of the petitioner Karine Aivazova. This is an immigration case, specifically an asylum case governed by the law prior to the REAL ID Act and it stems from a Bourbonnoe Affirmance by the Board of Immigration Appeals. That requires that this court is viewing the IJ's determination. In this case, the IJ made one dispositive determination, which is that the petitioner, Ms. Aivazova, was not credible when she testified. But then he went on from there, didn't he? And said, as an alternative finding, he found that she had not suffered past persecution, wasn't it so? That's correct, your honor, in the sense that the petitioner's contention is that the case is basically a credibility determination. He washed over... Let me give you that and say, well, she was credible, and then we look at her testimony to see whether that established past persecution, did it? I believe it does, your honor. She was at a meeting of the Jehovah's Witnesses where the police came in and she was arrested. The transcript provides that she was specifically at pages 147 of the record that she was beaten and bruised. No, no, no, no, no, I don't think so. I looked at that, and I think you're right, it was 147. And the testimony was, well, if you look at page 146, at line 12 of the transcript, or line 13, it says when we got there to where the police took her to the jail, during those two days, they didn't touch us. And I don't think that was changed by anything she said at page 147. Well, on page 147, your honor, specifically lines 22 to 25, it says, you know what, I was in terrible condition. I have bumps and bruises all over, and I was afraid of showing up anywhere, any place, indicating that she was. How do you explain that where she says they didn't touch us? I'm not sure, your honor. The record doesn't necessarily lend support to any sort of explanation. The immigration judge didn't use that as a basis in his finding. We are here to basically determine whether the stated reasons by the immigration judge are proper. Well, didn't he make an alternative finding that, referring to page 60 of the record, the respondent in this case has not convinced the court that even if she were to assert such a claim that was found valid, that her problems were so severe as to rise to the level of persecution. The argument here, your honor, is that it was sufficient to rise to persecution. She stated that she was bruised. It's in her declaration. It was in her testimony that she was beaten and bruised. And it's also consistent with that. You say it was in her testimony. What they asked her was if she required, did you require medical treatment. She never answered that. I think she may have said, well, I was afraid to go any place. That probably would respond to that. And she said she had bumps and bruises all over. But how did those bumps and bruises get there? I believe the reasonable, the questioning is unclear on that aspect. But I believe reading the record and giving the logical inferences that it deserves, she is stating that this did happen as a result of the beating from the police detention on March 6th of 2000. Furthermore, if you continue reading on in the record, it shows that there's a natural correlation that that was a line of inquiry. Because at the top of 148, it was talking about problems with her heart. And it was all, at least my contention in the record, the way I'm reading the record, it leads it to believe that this was all the result of that final experience that she had with the police. Not final, but the experience she had with the police where she was arrested, detained, and she claims that she was bruised and beaten. I don't see that the record really lends any other support, any other interpretation in the record. The other issue, I'm not sure if the court is focused as much on the credibility determination as much. Because here, there's nothing in the record to support the immigration judge's decision. The immigration judge basically found that the petitioner was not a valid member of the Jehovah's Witnesses because in another case that the judge had presided over, which he doesn't mention an alien number, there's no transcript provided, and there's no evidence provided, that he heard an expert testify in that case that what was transpiring in the instant matter is not a possibility. There's nothing in the record for meaningful judicial review on that other than the conjecture that the immigration judge stated. Under this court's case law, if there's all the, and this is the basis for the immigration judge's credibility determination, if all the basis is fail, the respondent's testimony must be deemed credible, and there's no further corroboration required. The immigration judge took issue with the corroboration of the petitioner because she didn't have a witness present. However, the witness did provide a letter to the court on the final date after she had switched attorneys and the new attorney had only been on board approximately two or three months, indicating that the witness was unavailable. If this point was something so crucial where someone's life is at risk claiming persecution, it's really, the judge could have just said, you know what, I'm going to give you some more time. There was other indications in the record where the court wasn't ready to go, where previous counsel wasn't ready to go. There was really not a hardship to allow something like that. But nevertheless, there's nothing supporting the immigration judge's credibility determination. And if I would add, I would like to add and then reserve the remainder of my time for rebuttal, that given the tenor of the immigration judge's decision, and given that he denied the case based primarily on an adverse credibility finding, he's really not giving sufficient weight to the evidence that's before it. I believe the proper course of action in this matter is since the immigration judge's credibility determination fails, and since really the determination that the evidence in the record does not support the BIA in the judge's conclusion that she has not alternatively established a well-founded fear or passed persecution, the record needs to be remanded anew to the immigration judge with instructions that this credible evidence needs to be weighed to see if the standard has been properly met. It's very hard to divorce the immigration judge's credibility finding from the secondary finding that's occurring in this matter, and it's proper since it was based on a determination like that and under Ventura to properly determine the matter in the first instance by the agency, which has not happened. And if I would note, even though this is a Burbano affirmance and we are looking at the IJ's decision, if you notice that the board in their decision, which is on page 2 of the record, it says that it was a, that the respondent has not adequately established the credibility of her testimony and factual claims. They are basically reiterating as the primary thrust of the underlying decision that it was based on a credibility determination and not on the alternative finding. Did you want to reserve the balance of your time? Yes, Your Honor. Thank you very much, sir. Good morning. May it please the Court. My name is Eliza Ayesh-Marney and I represent the government of the United States. As Petitioner's Counsel noted, this case is based on a purported incidence of persecution on two separate religious incidents. The two issues before this Court is whether the record compels reversal of the immigration judge's adverse credibility determination and, assuming credibility in the alternative, whether the record compels reversal of the immigration judge's determination that Petitioner failed to establish eligibility for asylum withholding of removal and cat protection. With respect to the adverse credibility determination, the immigration judge appropriately based his adverse credibility determination on Petitioner's inconsistent and implausible testimony, her generic and meager weak claim, a negative credibility inference based on her inability to provide any corroborative witnesses, even after five continuances over a year to do so. I'm sorry to interrupt you, but doesn't all of that go to say that she did not sufficiently establish that she was a member of the Jehovah's Witness Church? And if we give you that and say that's right, she did not sufficiently establish that. But it seems that she did establish that she attended the meetings of the Jehovah's Witness Church and that she participated in them. And shouldn't that be enough? Do you have to be a member of the church? With respect to that question, I believe you're asserting that imputed that sort of line of reasoning. The issue here, though, is whether back in Georgia she had established that she was a member of the organization, such that she would – I'm sorry, not even a member, an attendee or an investigator. Either of those would work. The government immigration judge was not making this determination based on the fact that she had not established she was a member because only members as opposed to attendees or investigators. His issue with her claim after she came to the United States, and the record supports this, is that anybody can go to a Jehovah's Witness Hall and attend these events. If you look at the record at page 196, which the slight documents that actually were entered into evidence, as opposed to the doctor's note and the note from Georgia based on her detention, the letter from the leader of the Jehovah's Witness Hall is dated – states that she started attending in September 2001. She entered the United States in August 2000. She filed her asylum claim in August of 2001. She did not start attending such meetings until she had already established her claim. So if you look at the tenant of the immigration judge's determination, it was consistently that anybody can bootstrap a claim of asylum or persecution to a group that may or may not be harassed more than another in another country. His problem was, you've got a blood card from Georgia, fine. Maybe in Georgia that happens. In the United States, from my sense of experience – Yeah, that bothered me too. Where's the evidence of that other than his saying, well, I know that? Well, this court has upheld the ability for an immigration judge to make an inference based on his experience in that situation. If you imagine, these immigration judges – obviously this case is pre-real ID. Post-real ID, the changes came into place where demeanor would matter and that sort of thing, noting that an immigration judge is in the best position to see what's going on in his courtroom or her courtroom. That is not the law for this case. However, the reasoning is the same. This immigration judge knows what claims are coming through his court. He knows what is legitimate, what is not. This court has held up and may have paused that an immigration judge inappropriately determined or drew an inference that the issue was that a purported Jehovah's Witness swore under oath to God, which was inconsistent with the tenets. Now, the government is not arguing that Your Honors should review this record and determine whether this individual was a good Jehovah's Witness. Merely, respectfully, I as a Jew, for example, I would not ask this court to review my record whether I eat bacon or not, whether I attend services or not, but rather whether I know that Jesus has been reborn, that sort of thing. These are two different issues. So the issue with regard to Petitioner's implausibility or inconsistency in that Jim Ott, whoever he was, though he was not allegedly an elder of the group, was able to provide this document, was inconsistent with his knowledge. Let me just give out the black card. I'm a little puzzled about that. This is not the equivalent of a baptismal certificate or anything else. It's not signed by a church official. It's simply a document that says, I'm a Jehovah's Witness. Don't give me a transfusion. Isn't that what it says? But it does need to be signed by somebody. Yeah, this person who doesn't want the transfusion. No, there's a witness. There has to be a witness. Okay, so I sign it. Don't give me a transfusion. And Judge Hall witnesses my signature. It's not an official document that certifies that you're a Jehovah's Witness or anything else. It's a direction to emergency personnel not to give the holder of the certificate a transfusion. That's all this is. True. So anybody and his uncle can go down and pick up a blank form and get it. But this was inconsistent with the immigration judge's knowledge of what occurred. Yeah, but his knowledge is faulty about what these things are. With all due respect, I'm not convinced that his knowledge is faulty. If there was no collaboration then. I agree. It's not signed by, it doesn't call for anybody to certify that the holder of this thing is a certified card-carrying Jehovah's Witness. It's just an instruction to medical personnel not to transfuse anybody. The document itself does. Yeah. In the immigration judge's knowledge, which, again, under this court's law he's allowed to infer. He may think it comes from the Pope or something, but it's not. I mean, that's not what it is. Not who signs it. That's not the issue. The issue is that it was signed whatsoever to an attendee or an investigator as opposed to a baptized member. That's the issue here. And he found that implausible. If I may, I only have three minutes left. I'd like to turn to the alternative finding, which is that even if credible, Petitioner established, or failed to establish, excuse me, eligibility for asylum withholding and cap protection. Specifically, the immigration judge found, and because of Bourbono and the summary affirmance and adoption by the board, the immigration judge found that Petitioner passed incidents of harm did not rise to the level of persecution. Now, this court clearly has much case law establishing that a two-day detention without severe mistreatment does not rise to the level of persecution. Guven v. Gonzales in 2006, Kumar v. Gonzales, which hadn't been sent, but as this bench knows, past persecution is not compelled where police enter a home on one occasion, punch an alien in the stomach, leave bruises, verbally abuse him, lock him in a cell overnight, hit his head against a wall, and otherwise threaten him. Prasad v. INS, haram. There are many instances where this court has determined that the experiences, even if credible, Petitioner faced, while unfortunate, do not amount to persecution. So at this point... How long would they have to detain her without food before you think it would cross the threshold? This is an issue that is a finding of fact that has been delegated by Congress to the attorney judge, I'm sorry, attorney general, and then down to the immigration judges. It's not for me to say. It's not, respectively, for this court to say. You could say seven days would not... It depends on the circumstances. Well, seven days without food, that's the circumstance I'm positing. I'm unfortunately not in a position to make those findings a fact. The immigration judge in this instance determined that, based on one incident of an interruption of a prayer meeting in February 2000, one interruption of a prayer meeting with an arrest in detention without food did not rise to the level of persecution in this instance. And there's plenty of case law that establishes that past persecution is not compelled. The important thing in this case is to remember that it is whether the record compels reversal, and here it's the government's argument that it does not. Because the government believes that the immigration judge's adverse credibility determination is proper and alternatively that the immigration judge's determination with respect to petitioner's inability to establish past persecution, the government would request that this case be denied. Thank you. Thank you. Mr. Porter, you get the last word. Thank you, Your Honors.  The tenor of the entire decision and the entire record from day one is basically, I don't believe you. Prove this up to me. And at that point it was a Sisyphean task for lack of a better term, and Ms. Ivozova was facing an uphill battle to try and convince a doubting Thomas. She tried to do the best she could to submit it. The judge has offered no concrete examples of evasiveness, of lack of demeanor, of inconsistency that's supported by any evidence in the record. Taking that as a whole, this court has multiple routes that it can go. I don't believe, I can't speak for the court, but I don't believe that the court is inclined to find that the judge's credibility determination is supported by substantial evidence. I believe the bigger question is, fine, what do we do with this now? In those circumstances, since all the factors were not considered, the issue of being detained two days without food was not mentioned once in the judge's determination regarding why this person did not suffer past persecution. That's not considering all the evidence in the record. That's not a proper determination, and therefore, whether someone has denied food for two days and water for two days on top of the indications in the record that she had been beaten and bruised would require further fact-finding with the full set of facts, which, in my opinion, should be found credible, and there should not be required further corroboration, as this case is a pre-Real ID Act case. Unless the court has further questions, I'd like to submit it. Thank you. The case just argued is submitted.
judges: Hall, Thompson, Silverman